UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PANORAMIC STOCK IMAGES, LTD., d/b/a PANORAMIC IMAGES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 9881 |
| THE McGRAW-HILL COMPANIES, INC., | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Panoramic Stock Images, Ltd. ("Panoramic") is an Illinois business that licenses photographs to publishers, including Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill"), an education publisher. For several years, the parties operated under an agreement that permitted McGraw-Hill to make limited use of photographs in which Panoramic claims to hold a copyright. In this lawsuit, Panoramic alleges that McGraw-Hill has exceeded the scope of the license agreement by publishing copyrighted photos in unspecified "additional publications." (Compl. [1] ¶ 12.) Panoramic charges McGraw-Hill with copyright infringement and contributory copyright infringement and claims that McGraw-Hill itself maintains "a list of its wholly unauthorized uses." *Id.* McGraw-Hill has moved to dismiss certain of Panoramic's claims for failure to state a claim on the ground that, according to McGraw-Hill, those claims rely on defective or unissued copyright registrations in violation of 17 U.S.C. § 411(a). For the reasons explained below, Defendant's motion to dismiss [10] is denied.

<u>FACTUAL BACKGROUND</u>

Panoramic is a stock photography agency. It licenses photographs created by various photographers to other entities such as textbook publishers. McGraw-Hill is a licensee of Panoramic. (Compl. [1] ¶¶ 1-2, 7.) Between 1991 and 2012, McGraw-Hill paid Panoramic for

limited licenses to use copies of 170 photographs[1] over which Panoramic claims copyright in some of McGraw-Hill's educational publications. (Compl. ¶¶ 5-7; Table of Images [1-1], Ex. 1 to Compl.) The licenses expressly limited the number of copies McGraw-Hill could use, as well as the distribution area, image size, language, duration and nature of the media in which McGraw-Hill was entitled to use the images. (*Id.*)

At some point prior to December 2012, Panoramic allegedly learned that McGraw-Hill had violated the licensing agreements by exceeding the permitted uses of the photographs at issue here, including by using the photographs in publications that exceeded the licensing agreements' scope and terms. (Compl. ¶¶ 11-13.) Panoramic claims that "McGraw[-Hill] alone knows [the full extent of] these wholly unauthorized uses," but alleges that Defendant "has developed a list of its wholly unlicensed uses and Panoramic's Photographs are among those McGraw[-Hill] has so identified." (Compl. ¶ 12.) On December 4, 2012, Plaintiff provided Defendant with a detailed listing of the 276 limited licenses (involving 170 photographs) at issue, including the photographs' authors, descriptions, copyright registration identifications, and license limits. (Compl. ¶ 13.) According to Plaintiff, Defendant did not respond to Plaintiff's request that Defendant provide accurate information about Defendant's actual use of the photographs and declined to state which, if any, of the photographs it infringed. (Compl. ¶ 13.)

Plaintiff further alleges that Defendant has a pattern of copyright infringement. According to Panoramic, McGraw-Hill repeatedly requests and pays for limited use licenses and then proceeds to exceed those limited uses. (Compl. ¶ 14.) Plaintiff asserts that Defendant's entire business model is, in fact, "built on a foundation of pervasive and willful copyright infringement." (*Id.*) As support for its claim, Plaintiff lists a series of suits filed by other stock photography

---

[1]     Though Panoramic lists only 170 photographs, it identifies 276 different limited licenses that McGraw-Hill allegedly exceeded. (Table of Images [1-1], Ex. 1 to Compl.) The number of limited licenses Plaintiff identifies exceeds the number of photographs because some of the photographs were licensed multiple times for different purposes.

Case: 1:12-cv-09881 Document #: 32 Filed: 08/09/13 Page 3 of 14 PageID #:422

agencies and photographers against Defendant, asserting similar copyright infringement claims. (Compl. ¶ 15.)

In response, McGraw-Hill argues that Panoramic cannot sue for copyright infringement of 101 of the 170 photographs at issue because, it claims, Panoramic lacks valid copyright registration for those 101 photos. (McGraw-Hill does not challenge Panoramic's standing to sue on the remaining 69 photographs.) According to Defendant, 52 of the relevant photographs lack valid copyright registrations, and 49 more are not registered at all. McGraw-Hill argues that Panoramic's claims that arise from those 101 photographs should therefore be dismissed because the alleged copyright registration deficiencies "preclude Panoramic from litigating the majority of its copyright infringement claims." (Def.'s Partial Mot. to Dismiss [10], hereinafter "Def.'s Mot.", at 2.)

## DISCUSSION

### Standard of Review

A party may seek dismissal of a complaint for a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court reads the complaint in the light most favorable to Plaintiff in order to determine whether Plaintiff has stated a plausible claim for copyright infringement. *See Hobbs v. John*, No. 12-3652, ___ F.3d ___, 2013 WL 3717764, *3 (7th Cir. July 17, 2013). To establish copyright infringement, Plaintiff must allege that it had ownership of a valid copyright and that Defendant committed unauthorized copying of constituent elements of original work. *Id.* (citing *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012)).

Plaintiff Panoramic has adequately alleged that McGraw-Hill made unauthorized use of the photographs at issue. At this stage, the parties dispute only whether Plaintiff held valid copyrights in those photographs. McGraw-Hill asserts that Panoramic failed to identify the authors or titles for

52 of the 101 disputed photographs when it sought copyright protection. As a result, McGraw-Hill urges, those registrations are improper and the photographs do not qualify for copyright protection. With respect to 49 other photographs, Panoramic has submitted a copyright application but has not yet received a registration certificate from the Copyright Office. McGraw-Hill contends that Panoramic is not entitled to enforce its copyright for those photographs in this action until the certificate has issued. The court addresses these arguments separately.

## I.    Copyright Protection for Works Listed Without an Author or Title

The court first addresses the matter of the photographs' identification in copyright registrations. A plaintiff must register a copyright claim with the Copyright Office before bringing a civil action for infringement. 17 U.S.C. § 411(a). As McGraw-Hill observes, 52 of the photographs at issue here were registered for copyright protection without their individual authors or titles listed. (Reply Mem. of Law in Further Support of Def.'s Partial Mot. to Dismiss [19], hereinafter "Def.'s Mem.", at 2, referencing registrations VA841-131, VA957-799, VA957-800, and VA1-002-221 [10-1], Ex. A to Def.'s Mot.) Section 409 of the Copyright Act requires that "the name . . . of the author or authors" of a work and "the title of the work" be included in the registration. 17 U.S.C. § 409(2), (6). Plaintiff admits that the registrations do not include this identification information for each of the 52 photographs, but argues that the photographs nevertheless qualify for copyright protection because (1) they were part of properly-registered compilations whose author and title were listed; or, alternatively, (2) the omissions were too minimal for the registrations to fail to satisfy the requirements of 17 U.S.C. § 411(b). (Pl.'s Opp'n to Partial Mot. to Dismiss [18], hereinafter "Pl.'s Mem.", at 5 (admitting that "the registration applications did not include every author of the photographs").)

The parties agree that there is no need to list the author of each individual work in a

collective work in order to obtain registration for the collective work as a whole.[2]  *See, e.g., Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 90 (S.D.N.Y. 2010). Registration of a collective work protects the selection, coordination, and arrangement of the collective work.  What is less clear is the extent to which that registration extends protection to the collective work's individual components.  *See Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480 (7th Cir. 1996) (denying copyright protection to the constituent recipes contained in a cookbook because they were not sufficiently original, and noting that registration of a compilation does "*not necessarily*" protect a compilation's elements) (emphasis in original); *Muench*, 712 F. Supp. 2d at 90 (registration by a third party of an automated database consisting of a compilation of photographs does not permit the individual photographers to sue for copyright infringement) (citing 17 U.S.C. § 103(b)'s provision that "[t]he copyright in a compilation . . . extends only to the material contributed by the author of such work . . . and does not imply any exclusive right in the preexisting material.").

The parties dispute whether Panoramic's registration of the 52 photographs only as part of several collective works allows Panoramic to sue for copyright infringement of the individual photographs whose identification information is not listed in the collective works' registrations.  In registrations VA841-131, VA957-799, VA957-800, and VA1-002-221, which include the 52 photographs at issue, Plaintiff registered groups of photographs by listing titles for the collective work as a whole (for example, "Panoramic Images: no. W6") and some, but not all, of the individual authors.  (Copyright Registrations [10-1], Ex. A to Def.'s Mot., at 2-5.)

Plaintiff argues that because Section 409 of the Copyright Act refers to the registration of a singular "work" without distinguishing between registration of a single work and a compilation, "it

---

[2]        Though the parties use the term "compilation," the court notes that a compilation made up of individual components which are themselves copyrightable is a "collective work," and therefore adopts that term.  *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, No. 12-2102, ___ F.3d ___, 2013 WL 3722365, *4 (4th Cir. July 17, 2013) (citing 17 U.S.C. § 101).

follows that § 409 only requires that the author or authors and title of the *compilation* work . . . must be listed on the registration application." (Pl.'s Mem. at 5-6.) Plaintiff cites no authority for this position beyond the use of "a work" or "the work" in the text of Section 409. In response, Defendant points out that the plain statutory language of Section 409 requires a registration to include each "author or authors"–demonstrating, in Defendant's view, that the author and title of each component part in a collective work must be listed in order for the component works to obtain copyright protection. (Def.'s Mem. at 2.)

Defendant contends that Plaintiff's reading of Section 409–to require only that the author and for the collective work be listed in order to extend copyright protection to each of the component parts–would render the law "meaningless." Under that reading, Defendant asserts, the law would not require "proper identification for the individual registered works." (Def.'s Mem. at 3.) Listing all constituent authors and titles is required, Defendant argues, to serve the "public notice function of a copyright registration" by identifying protected components and creating a searchable public record of copyrighted works. (Def.'s Mot. at 6, Def.'s Mem. at 3, citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010) ("central purpose" of registration requirement is "the compilation of a robust national register of existing copyrights").) Defendant also urges that the Copyright Act's legislative history indicates that the Section 409 registration requirements were intended to create a public record of who created and who controls protected works. (Def.'s Mem. at 4.) In order to serve that purpose, Defendant urges, the authors and titles of the individual components of a collective work must be listed in a copyright registration for that registration to cover each component work.

As support for this reading of Section 409, Defendant cites several cases from other circuits. (Def.'s Mot. at 5.) In *Muench*, a Southern District of New York court determined that the plain language of Section 409 required the author and title of each component photograph in an automated database to be listed in a copyright registration, and held that registration of the

6

database containing a compilation of photographs was therefore not sufficient for the plaintiff photographer to bring a copyright infringement suit challenging a publisher's use of the individual images. 712 F. Supp. 2d at 92-95 (granting in part defendant's motion for summary judgment). In *Bean v. Houghton Mifflin Harcourt Publ'g. Co.*, a district court judge in the District of Arizona granted a motion to dismiss a copyright infringement claim and similarly determined that registration of a collective work made up of various photographs was insufficient to permit each photographer to sue for copyright infringement. No. 10-CV-8034(PCT)(DGC), 2010 WL 3168624, *3-4 (D. Ariz. Aug 10, 2010), *appeal docketed*, No. 10-16771 (9th Cir. Aug 12, 2010). In *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g. Co.*, a judge in the District of Alaska likewise granted a motion to dismiss a copyright infringement suit over images contained in a CD-ROM database and ruled that registration of the automated database did not provide copyright registration under Section 409 for the individual images. No. 3:09-CV-0061(HRH), 2010 WL 3785720, *4 (D. Ala. Sept. 21, 2010) (9th Cir. argued July 27, 2011). In *Alaska Stock*, as in this case, the plaintiff was a stock photography agency suing a publishing company that the plaintiff claimed had exceeded its limited licenses.

In response, Plaintiff notes that the United States of America has filed *amicus* briefs in support of the appellants in *Alaska Stock* and *Bean*, arguing that the Copyright Office has permissibly interpreted Section 409 not to require a registration application to identify the author of all claimed component works, and that courts should defer to that interpretation. (Brief for the United States of America as Amicus Curiae, Ex. A to Pl.'s Mem., at 13-24.) And, in a case decided after briefing on this motion was complete, the Fourth Circuit interpreted Section 409 consistently with Plaintiff's view that the statute does not require the copyright registrant to identify each individual author and title in a collective work. *See Metropolitan Regional Info. Sys. v. American Home Realty Network, Inc.*, No. 12-2102, ___ F.3d ___, 2013 WL 3722365, *6 (4th Cir. July 17, 2013). As noted in that Fourth Circuit opinion, other district courts, too, have rejected the

7

interpretation of Section 409 for which Defendant here argues. *See, e.g., Craigslist v. 3Taps*, No. 12-03816 (CRB), ___ F. Supp. 2d ___, 2013 WL 1819999, *9 (N.D. Cal. April 30, 2013) (denying motion to dismiss copyright claims because registration of Craigslist website and database also registered "component works to which Craigslist has an exclusive license, despite the omission of individual authors from the registration application"); *Am. Inst. of Physics v. Schwegman Lundberg & Woessner, P.A.*, No. 12-528(RHK)(JJK), 2012 WL 3799647, *2 (D. Minn. July 2, 2012) (concluding that plaintiffs' registration of journals as collective works was sufficient to satisfy the pre-suit registration requirement for individual articles); *Masterfile Corp. v. Gale*, No. 2:09-CV-966, 2011 WL 4702862, *2 (D. Utah Oct.4, 2011) (finding that plaintiff's ownership of the constituent parts of a collective work allows registration of the collection to "extend[] copyright protection to the constituent parts").

In *Metropolitan*, the Fourth Circuit considered whether the component photographs in a database of property listings were also protected by copyright when their individual authors and titles were not part of the database's copyright registration. The Fourth Circuit affirmed the district court's decision that the individual photographs had been registered and held that reading Section 409 to mean that the registration of a collective work also protects each component work is "more consistent with the statutory and regulatory scheme" because individually listing huge numbers of component photographs would add excessive impediments to the registration process. *Id.* In reaching its decision, the Fourth Circuit noted that *Bean*—one of the principal cases relied upon by Defendant—was factually inapposite from *Metropolitan* because *Bean* considered only whether the *photographers* who originally produced the component photographs at issue could rely upon the collective work registration by a third party to satisfy their pre-suit registration requirements. In *Metropolitan*, as here, it is not the original photographers who have filed suit. Instead, Plaintiff is not the photographer, but instead is the owner of the component photographs who registered them as part of several collective works.

The individual photographers are not parties to this action, and the parties have not commented on the issue of whether those photographers, or any other persons, possess rights to the photographs at issue here. (Def.'s Mot. at 2.) Without specifically addressing the issue here, the Second Circuit considered the question whether the copyright registration of a magazine (deemed a collective work by the Copyright Office) reached the contributions of the individual authors, thereby permitting the author of an article to bring a copyright infringement action. *See Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001). In affirming dismissal of the author's complaint, the Second Circuit suggested that registration of a collective work may be sufficient to permit an infringement action concerning that work's components, but only when all rights in the constituent component have been transferred to the claimant. ("[W]here the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part.") *as clarified on denial of reh'g*, 283 F.3d 502, 505 (2d Cir. 2002) (removing Part I of the original opinion containing the relevant section, but adhering to the conclusion that "if all rights in a constituent work have not been transferred to the claimant, a collective work registration will not apply to the constituent work.").[3]

The Seventh Circuit has not explicitly addressed this issue. The closest it has come is in *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480 (7th Cir. 1996), where it denied copyright protection to the constituent recipes contained in a cookbook because the individual recipes were not sufficiently original to merit copyright protection. Looking to the text of Section 409, this court is unpersuaded by Defendant's argument that the statute's plain meaning requires that a collective work's registration must always include the author and title of each of its individual

---

[3]    *Muench* was abrogated in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) to make clear that the statutory provisions at issue here are not to be interpreted as jurisdictional requirements: "Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."

components in order for registration to extend to those components. The fact that 17 U.S.C. § 409 requires a copyright application to include "the author or authors" does not answer this question, because there could well be more than one author involved in the process of selecting and arranging works for inclusion in a collective work or compilation. Nor is the question at issue here answered explicitly in 17 U.S.C. § 103. The language of that provision appears to be aimed at the potential competing interests of the maker of a compilation and the creator of constituent parts, as it states that "[t]he copyright in a compilation . . . extends only to the material contributed by the author of such work . . . and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).

Defendant contends that the court should adopt its reading of Section 409 on public policy grounds to ensure that public has adequate notice about copyright registration. That notice is lacking, Defendant urges, when registrations do not include the title and author of protected works. (Def.'s Mem. at 3-4.) The court is not prepared to assume that recognizing copyright from collective registration creates public notice problems. The facts in this case are illustrative: McGraw-Hill allegedly knew full well that Panoramic claimed copyright over the photographs at issue, and even paid Panoramic for licenses to use those photographs. McGraw-Hill only challenges Panoramic's copyright now that Panoramic has accused McGraw-Hill of purposefully exceeding its licensed use of those photographs, behavior which Panoramic claims is part of a larger pattern of excessive use. In this context, the court is unwilling, at the pleading stage, to enter a ruling on the presumption that a hypothetical user may innocently fail to recognize that works within a copyrighted collective work are themselves protected. The interests and rights of the author of a compilation or collective work may be notably different from the interests and rights of the authors of the component parts of that compilation or collective work, but this case involves the separate issue of conflict between collective work copyright holders and those who use a work but can claim no interest of their own in it.

As Plaintiff notes, the Copyright Office appears to have adopted an interpretation of Section 409 under which copyright registration of a collective work will cover the component works as well. *See* Compendium of Copyright Office Practices II § 615.06 (providing that the "names of the individual authors of separate contributions being registered as part of [a collective work] claim need not be given on the application"). The Copyright Office has directed that registration of a collective work "may cover (a) the collective work authorship, (b) any contribution created by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer." *Id.* When, as in this case, "the work being registered was created by a large number of authors, the application will be considered acceptable if it names at least three of those authors, followed by a statement such as 'and [number] others.'" *Id.* at § 615.07(b)(3). Defendant contends that the Copyright Office's interpretation of Section is entitled to no deference because the meaning of Section 409 is plain and unambiguous, but for reasons already explained, the court finds the statutory language open to interpretation. In the alternative, Defendant argues that the Copyright Office's published guidance on registering a group of works by a photographer undermines any claim that Plaintiff's registration of the collective work in this case registers the constituent photographs. (Def.'s Mem. at 6, citing Copyright Office Circular 40: Copyright Registration for Works of the Visual Arts, *available at* www.copyright.gov/circs/circ40.pdf (stating that a single registration can be made for a group of published photographs only if the same photographer took all the photographs). The language Defendant cites, however, addresses the practice of using a single registration for multiple photographs, not registration of a collective work, as in the case here. The Copyright Office appears to have adopted the position that registration of a collective work may cover its component works.

At this early stage, and in light of the varying interpretations of Section 409 adopted by the parties and various courts, the court grants deference to the Copyright Office's reasonable

interpretation of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). Defendant's motion to dismiss is therefore denied as to all 52 of the photographs whose author or title are unlisted in the relevant registrations.[4]      .

## II.      Copyright Protection of Pending Applications

As noted above, Defendant challenges the copyright registration of 101 of the 170 photographs at issue in this case. With respect to the remaining 49 of those 101 challenged photographs, McGraw-Hill argues that Panoramic should not be allowed to proceed on infringement claims for those 49 photographs because Panoramic has submitted a copyright application for those photographs but has not yet received a registration certificate from the Copyright Office. The court notes that there is a circuit split on the question of whether a pending copyright application is a sufficient basis for filing a copyright infringement suit (referred to as the "application approach"), or whether a copyright registration must be completed first (the "registration approach"). *See Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009) (noting circuit split over "whether registration is complete when an application is made or only after the Copyright Office has acted on the application"), *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615-16, 621 (9th Cir. 2010) (collecting cases and adopting the application approach). Courts adopting the registration approach urge that it follows the plain language requirements of Section 411(a). *See, e.g., North Jersey Media Group Inc. v. Sasson*, No. 2:12 CV 3568(WJM), 2013 WL 74237, *2 (D.N.J. Jan. 4, 2013) (dismissing copyright claim based on lack of issued registration),

---

[4]      As noted earlier, Plaintiff argues that even if its registrations of the 52 photographs were improper because of the omission of required author and title information, its registration nevertheless covers the challenged photographs because the omissions were excusable errors within the meaning of Section 411(b). Under Section 411(b), a certificate of registration provides the basis for a copyright infringement suit even when it contains inaccurate information, unless that information was (1) known to be inaccurate and (2) "the inadequacy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). As Defendant sees things, "Panoramic completely omitted information required by Section 411(b), which goes far beyond inaccuracy." (Def.'s Mem. at 7.) In light of its interpretation of § 409, the court need not reach this issue.

*Mays & Assocs. v. Euler*, 370 F. Supp. 2d 362, 368 (D. Md. 2005) (because Section 411 lays out "the process of seeking registration . . . without labeling this process as *registration*," the words "application" and "registration" cannot be read as synonymous) (emphasis in original).  For their part, advocates of the application approach argue that the language of the statute is ambiguous and that the application approach better carries out the purposes of the statute by providing broad copyright protection without undue delay.  *See Cosmetic Ideas*, 606 F.3d at 618-19.

Although the matter is not free from doubt, the court understands the cases in this Circuit to adopt the application approach.  *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003) ("Although a copyright no longer need be registered with the Copyright Office to be valid, an application for registration must be filed before the copyright can be sued upon."). citing 2 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 7.16[B][1][a] (2003); *Leventhal v. Schenberg*, 917 F. Supp.2d 837, 844 (N.D. Ill. Jan. 17, 2013) (following *Chicago Bd.of Educ. v. Substance* and adopting the application approach), *Hard Drive Prods., Inc v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, *3 n.2 (N.D. Ill. Oct. 12, 2011) ("Although the Seventh Circuit has not expressly ruled on this issue, this Circuit appears to follow the application approach."); *but see Gaiman v. McFarlane*, 360 F.3d 644, *655 (7th Cir. 2004) ("[A]n application to register must be filed, and either granted or refused, before [a copyright enforcement] suit can be brought."), *TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*,  No. 10 CV 1304, 2012 WL 394229, *4 (N.D. Ill. Feb. 1, 2012) ("The mere filing of an application for copyright registration does not satisfy the statutory requirement that a copyright must be registered prior to the initiation of an infringement action.").  The application approach is also logical here, where Defendant clearly accepted the validity of Plaintiff's claim to all 101 of the disputed photographs—the 52 which were registered as parts of collective works, and the 49 which are pending registration—enough to pay Plaintiff to use them under licensing agreements over a period of more than ten years.  The court therefore denies Defendant's motion to dismiss as to the 49 photographs which are pending registration with the

Copyright Office.

## **CONCLUSION**

Defendants' motion to dismiss [10] is denied.

ENTER:

Dated:  August 9, 2013

_____

REBECCA R. PALLMEYER
United States District Judge