**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PANORAMIC STOCK IMAGES, LTD. | ) | Case No. 12-cv-09881 |
| d/b/a PANORAMIC IMAGES | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S RESPONSE IN** |
| McGRAW-HILL GLOBAL EDUCATION | ) | **OPPOSITION TO DEFENDANTS'** |
| HOLDINGS, LLC, *et al.*, | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Panoramic Stock Images, Ltd. ("Panoramic") hereby responds to the motion for partial summary judgment (Doc. No. 54) filed by Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC (collectively, "McGraw").

## FACTUAL BACKGROUND

Panoramic is a stock photo agency located in Evanston, Illinois. McGraw obtained the photographs at issue by requesting licenses for limited use, which Panoramic issued. McGraw then exceeded the licenses it purchased. Panoramic filed its complaint for copyright infringement on December 11, 2012.[1]

## LEGAL STANDARD

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] In resolving McGraw's motion,

---

[1] Doc. No. 1.
[2] Fed. R. Civ. P. 56(a).

the Court must construe all facts in a light most favorable to Panoramic and draw all reasonable inferences in Panoramic's favor.[3]

## ARGUMENT

**I.    The statute of limitations does not bar Panoramic's claims.**

Since the statute of limitations is an affirmative defense, McGraw has the burden of proving each claim it asks the Court to dismiss on this basis.[4]  McGraw's failure to establish the dates of its infringements is fatal to its statute of limitations defense.  Further, McGraw has not shown that Panoramic knew or should have know of the underlying facts giving rise to each of its claims for infringement more than three years before it filed its Complaint.  Finally, McGraw's contention that the "injury rule" rather than the "discovery rule" applies is wrong.

**A.    McGraw's failure to establish the dates of its infringements is fatal to its assertion of a statute of limitations defense.**

First, to successfully assert this affirmative defense, McGraw must show the first date of injury infringement by infringement.[5]  "[A] potential plaintiff cannot discover his injury before it has occurred."[6]  Then, only when McGraw can show the date Panoramic knew or should have known of the specific facts underlying each of the specific infringements here, does the three-year clock start for each claim.  Thus, to determine the cutoff date for filing a claim, McGraw

---

[3] *McKillup Indus., Inc. v. Integrated Label Corp.*, 477 F.Supp.2d, 928, 929 (N.D. Ill. 2006) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

[4] Fed. R. Civ. P. 8(c)(1) (statute of limitations is affirmative defense that must be pled); *see also Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2005) ("summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (internal quotations omitted) (*quoting Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

[5] *See Frerck v. John Wiley & Sons, Inc.*, No. 1:11-cv-02727, Memorandum and Order, Doc. No. 186 at p. 12 (N.D. Ill. July 14, 2014) ("The first step in applying the discovery rule is establishing when the injury actually occurred.") (*citing William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) and *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) ("the statute of limitations cannot begin to run until a defendant takes some action to injure the plaintiff")).  A copy of the Memorandum and Order is attached hereto as <u>Exhibit 1.</u>

[6] *Graham*, 568 F.3d at 438.

must establish the individual dates it infringed each of the in-suit photographs.[7]  The failure to provide this information – wholly within McGraw's possession – is fatal to its motion.  Rather than providing the required base proof – perhaps to avoid admitting copyright infringement – McGraw appears to be using Panoramic's invoice dates as a proxy for the date of first infringement.[8]  This is insufficient, however, because the invoice dates would necessarily be earlier than any of the infringements.  Neither can the Court determine which claims are *not* time-barred because McGraw's infringement continued into the three-year period preceding the filing of Panoramic's Complaint on December 11, 2012.[9]

Last week, Judge Dow denied another publisher's attempt (John Wiley & Sons, Inc., represented by the same defense counsel here) to avoid summary judgment for copyright infringement for nearly identical claims to those in this case because the defendant failed to provide the dates on which the specific infringements began and ended.[10]  Judge Dow stated, "[t]he first step in applying the discovery rule is establishing when the injury actually occurred. Only after determining the date of injury does a court then determine whether the injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable for the plaintiff to discover the injury."[11]  Judge Dow continued:

> Defendant's infringement of each photograph was done in a particular way, at a particular time.  Defendant has not submitted evidence establishing when its infringements of Plaintiff's images began and ended.  Therefore, Defendant's failure to prove when it infringed Plaintiff's images with respect to each claim involved in this motion prevents the Court from determining (1) if Defendant's infringements were timely under any circumstance, and (2) when

---

[7] *See* Exhibit 1 at p. 13.
[8] Doc. No. 57, p.5.
[9] See *Taylor v. Meirick*, 72 F.2d 1112 (7th Cir. 1983) (permitting a claim under the continuing wrong theory of copyright infringement for damages beyond three years before filing when the infringing act continues into the window preceding filing).
[10] Exhibit 1 at pp. 12-14.
[11] *Id.* at p. 12 (internal quotations and citations omitted).

> Plaintiff knew or reasonably should have known of the underlying facts giving rise to each infringement. . . . Defendant has the burden to prove that Plaintiff's claims are untimely, and it has failed to do so.[12]

The court then ruled Wiley was liable for copyright infringement on 100 claims of the same kind filed here.[13] McGraw made the same fatal error here.[14] For this reason alone, McGraw's motion for summary judgment on the basis of the statute of limitations should be denied.

**B.     Panoramic was not on inquiry notice that McGraw infringed the images in-suit and, even if it were, such notice does not start the statute of limitations clock.**

The Seventh Circuit applies the "discovery rule" to analyze the statute of limitations defense to copyright infringement claims despite McGraw's contrary assertions, later discussed in Section C. *Gaiman v. McFarlane*,[15] states the law of this Circuit when it holds that under the discovery rule, "the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights."[16] Although this seems straightforward, confusion has arisen in cases where defendants – like McGraw here – contend that even before a copyright holder "learns or should…have learned" of the infringements, the limitations clock starts running. An example of the fog is *Chicago Building Design, P.C. v. Mongolian House, Inc.*,[17] which McGraw quotes and primarily relies upon. *Chicago Building Design* states, "actual knowledge of an infringement is not required to trigger the running of the statute of limitations. Rather, the statute [begins] to run when [a

---

[12] *Id.* at p. 13.

[13] *Id.* at pp. 9, 11.

[14] *Muench v. Houghton Mifflin Harcourt Pub. Co., Inc.,* No. 09–CV–2669 (LAP), 2010 WL 8531498, at *1 (S.D.N.Y. Oct. 14, 2010) (declining to issue advisory opinion on motion for summary judgment based on statute of limitations defense where defendant did not submit evidence of when infringements occurred); *see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993) ("[A] federal court [lacks] the power to render advisory opinions.").

[15] 360 F.3d 644 (7th Cir. 2004).

[16] *Id.* at 653.

[17] 891 F.Supp.2d 995 (N.D. Ill. 2012).

plaintiff] ha[s] knowledge that would [lead] reasonable people to investigate the possibility that their legal rights had been infringed."[18]  This district court's holding contradicts *Gaiman's* rule. It also *conflicts with* another Seventh Circuit case, ironically cited by McGraw in footnote 8 of its brief.  McGraw cites, paraphrases, and quotes *Tregenza v. Great Am. Commc'ns Co.*[19] as authority that SEC Rule 10-b actions must be brought **"within one year after the discovery of the facts constituting the violation."**[20]  But, *Tregenza* supports Panoramic's argument rather than McGraw's and *Chicago Business Design*.

A closer look at *Chicago Building Design* reveals little analysis of why "inquiry notice" actually starts the limitations clock.  Without other citation or discussion, *Chicago Building Design* simply points to *CSC Holdings, Inc. v. Redisi*[21] for the dubious proposition that the statute begins to run when "Plaintiffs had knowledge that would have led reasonable people to investigate the possibility that their legal rights had been infringed."[22]  When one looks at *CSC Holdings*, it does say, "[n]onetheless, the statute begins to run once a plaintiff has knowledge which would lead a reasonable person to investigate the possibility that her legal rights had been infringed."[23]  But, two sentences before, *CSC Holdings* also says, "[s]tatutes of limitations are of course subject to equitable doctrines such as tolling, and **the modern tendency is to toll until the plaintiff knew or by reasonable diligence should have known of both the injury and its governing cause."**[24]  *Fries v. Chicago & Northwestern Transp. Co.*,[25] further elaborates – and this is where *Chicago Building Design* collapses:

---

[18] Doc. No. 57, p. 17.
[19] 12 F.3d 717 (7th Cir. 1993).
[20] Doc. No. 57, p. 12 (emphasis added); *see also Tregenza*, 12 F.3d at 718 (*quoting* 15 U.S.C. § 78i(e)).
[21] 309 F.3d 988 (7th Cir. 2002).
[22] 891 F. Supp. 2d 995 at 999 (N.D. Ill. 2012).
[23] 309 F.3d 988, 992-993 (*citing LaSalle v. Medco Research, Inc.*, 54 F.3d 443, 446 (7th Cir. 1995))
[24] *Id.* at 992 (emphasis added) (*citing Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir.1990)).
[25] *Fries*, supra.

> Following the guidance of the Supreme Court . . . in both Urie, 337 U.S. at 170, 69 S.Ct. at 1024–25,[26] and Kubrick, 444 U.S. at 120–21 n. 7, 100 S.Ct. at 358–59 n. 7,[27] this circuit adopted the rule that **a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause**.[28]

*Fries* does not support the rule that inquiry starts the clock; it says tolling ends when the injury is known. Then, *Fries* holds, once the injury is known, plaintiff has a duty to discover the cause and the statute is no longer tolled.[29]

*Chicago Building Design*'s overbroad formulation is mistaken legally and logically. Suppose the duty to inquire begins in 2009, but despite a copyright holder's diligent efforts she does not learn of the specific facts underlying the infringement until 2013. Under McGraw's theory, the statute will have run and the infringer let off the hook. But why should a plaintiff have *less* time to file a complaint where the infringer's infringements are secret and, despite months or years of investigation, are only discovered later, contrasted with the plaintiff who has the good fortune of having his work publicly infringed and learns of it as soon as it happens? Plaintiffs in either circumstance should have equal time to consider options, pursue settlement attempts, hire lawyers, gather supporting documents, register their work, and ultimately file suit. If "inquiry notice" starts the clock, however, defendants who clandestinely commit copyright infringement gain the value of a shorter limitations period over those whose illegality is apparent for all the world to see.

*Gaiman* should be taken at its word. The clock starts running when plaintiff discovers or

---

[26] *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018 (1949).
[27] *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352 (1979).
[28] *Id.* at 1095 (emphasis added) (citations omitted).
[29] *Id.*

should have discovered the underlying facts giving rise to each infringement.[30] *Berry v. Valance*[31] best articulates the rule. In *Berry*, the Ninth Circuit reversed the district court's finding that the statute of limitations had expired on fraud claims because the plaintiff failed to heed "storm warnings" in the form of a *Forbes* business article warning of potential investment risks in the defendant's stocks.[32] In doing so, the district court decided that the plaintiff was charged with "inquiry" notice and failed to timely bring his claims.[33] The Ninth Circuit concluded that since the article did not constitute storm warnings, there was no need to decide whether actual notice or inquiry notice should be the Ninth Circuit rule.[34] But, Judge Fletcher wrote, if the Ninth Circuit were to decide inquiry notice is the rule, then a two-step analysis would ensue:

> If we were to adopt inquiry notice, we would agree with the Tenth Circuit's formulation of that standard. In *Sterlin*, the Tenth Circuit surveyed case law from other circuits and found that most circuits 'generally apply an inquiry notice standard coupled with some form of reasonable diligence requirement.' In *Sterlin's* formulation, 'inquiry notice ... triggers an investor's duty to exercise reasonable diligence and ... the one-year statute of limitations period begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud.' Were we to apply the *Sterlin* test to this case, we would face two questions. First, did the *Forbes* article raise sufficient suspicion of fraud to cause a reasonable investor to investigate the matter further? Second, when should a reasonably diligent investor have discovered the facts underlying the alleged fraudulent activity? If the answer to the first question were yes, the answer to the second question would determine when the statute of limitations began to run.[35]

*Berry's* discussion is also consistent with the principles enunciated in *Gaiman* and in

---

[30] *Gaiman*, 360 F.3d at 653.
[31] 175 F.3d 699 (9th Cir. 1999)
[32] *Id.* at 701.
[33] *Id.* at 702-03.
[34] *Id.* at 704-06.
[35] *Id.* at 704 (internal citations omitted).

*Taylor v. Meirick*[36] where Judge Posner wrote: "Often, whether or not the defendant has done anything to conceal from the plaintiff the existence of the cause of action, the statute of limitations is tolled until the plaintiff learned or by reasonable diligence could have learned that he had a cause of action."[37]

Here, without question, the injury is the copyright infringement. The running of the statute, under *Meirick* and *Fries*, is tolled until Panoramic knew of the injury – here, the underlying facts giving rise to each infringement McGraw claims is barred by the statute of limitations. This did not occur until after discovery was completed and obviously only after filing this lawsuit.[38] Even McGraw admits that, prior to April 18, 2012, it was generally unaware of what copyright infringements it committed and when.[39] McGraw's own permissions manager declared that in late 2009, McGraw itself had difficulty figuring out what uses it was making of another photo licensor's photographs after he requested actual print run information.[40]

      ii.    **Neither Mr. Seidman's November 2009 email nor the unidentified magazine article McGraw cites alerted Panoramic to McGraw's infringements nor put it on "inquiry notice."**

McGraw contends Panoramic was on "inquiry notice" in November 2009 of potential claims when Mr. Segal read a magazine article describing an issue in the publishing industry

---

[36] 712 F.2d 1112 (7th Cir. 1983).

[37] *Id.* at 1117.

[38] *See Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997) ("Suspicious circumstances, coupled with ease of discovery, *without the use of legal process* . . . may cause the statute of limitations to start to run . . ..") (emphasis added).

[39] Second Declaration of Jennifer Johnson, attached hereto as Exhibit 2 ("Second Johnson Decl."), Exhibit A, McGraw's Objections and Responses to Plaintiff's Requests for Admission, served in *Grant Heilman Photography, Inc. v. McGraw-Hill Global Education Holdings, LLC, et al.*, No. 5:12-cv-02061-MMB (E.D. Pa.), Request No. 2 (denying that, prior to April 18, 2012, McGraw was aware it "had exceeded the terms of the limited licenses granted by the owners of copyrighted photographs, or their agents, in multiple publications.").

[40] *See* Exhibit B to Second Johnson Decl., Declaration of Jane Hoffelt filed in *DRK Photo v. McGraw-Hill Global Ed. Holdings, LLC et al.*, No. 3:12-cv-08093-PGR (D. Ariz.), at ¶¶ 4-11.

generally[41] and subsequently consulted with an attorney, Christopher Seidman, to learn more. The test for inquiry notice is an objective one.[42] Inquiry notice occurs when the plaintiff has "learned or should have learned the facts that he must know to know that he has a claim."[43] Such facts must be "sufficiently probative" to be "advanced beyond the stage of mere suspicion," but "can fall short of actual proof . . . ."[44]

McGraw fails to provide evidence supporting its assertion that Mr. Segal knew in November 2009 of the facts underlying the in-suit infringement claims Panoramic asserts.[45] Rather, the evidence shows that Mr. Segal had no knowledge of *any* specific claims.[46] Mr. Segal's deposition testimony confirms this:

> Q: Okay. And in that phone call, did Mr. Seidman or whoever it was you were talking to describe for you claims against Wiley.
> A: No. I don't think there were any specific claims discussed.
>                                      . . .
> Q: Then do you know why [Mr. Seidman] was indicating that a spreadsheet will need to be provided for each publisher and references Wiley?
> A: No, except it was a list of publishers that were related to the list he -- he -- he provided as an attachment.[47]

Later, Mr. Segal explained that Panoramic did not provide any spreadsheet to Mr. Seidman soon after receiving the email because, "[Panoramic] had no real knowledge -- our

---

[41] Doc. 57, p. 12; Doc. No. 56, ¶ 17. McGraw only devotes one sentence of its brief to this article and does not attach a copy to its moving papers. Thus, Panoramic will not dedicate much time addressing this claim. In *Frerck v. John Wiley & Sons, Inc.*, Judge Dow quickly dismissed this same argument stating, "an article identifying an issue in the publishing industry generally did not obligate plaintiff to go through 19 years of licenses to preserve his copyright infringement claims. If that were the expectation, then stock photo agencies likely would spend more time and money monitoring their licenses then they receive from issuing licenses." Exhibit 1, pp. 13-14

[42] *Law*, 113 F.3d at 786.

[43] *Id.* at 785.

[44] *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997).

[45] *See* Doc. No. 57, p. 13.

[46] Doc. No. 58-1 (McGraw's name appears once in the body of the email and once in an attachment).

[47] Exhibit C to the Second Johnson Decl., Excerpt from deposition of Douglas Segal ("Segal Dep."), at 199:21-200:13. The testimony refers to Wiley because it is from Mr. Segal's deposition in a parallel matter, *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, No. 1:12-cv-10003 (N.D. Ill.). McGraw did not take a 30(b)(6) deposition of Panoramic or depose Mr. Segal in this case.

business was primarily advertising and design firms. We weren't primarily an editorial agency, which is one of the reasons I found out about this much later than the general stock agency public."[48]

Mr. Segal also clarified that in November 2009, he was not aware of any specific publishers or titles or publications that infringed Panoramic's rights.[49] Mr. Segal testified he: (1) did not contact Mr. Seidman at that time with respect to any specific publisher,[50] (2) did not discuss any specific claims with Mr. Seidman in November 2009,[51] and (3) "was not aware of any instances where any publisher, including McGraw, was infringing Panoramic's photographs."[52]

To succeed in its motion, McGraw must establish that Mr. Segal's knowledge in November 2009 constituted more than "mere suspicion" that McGraw had infringed the photographs at issue here in the publications identified in Panoramic's complaint. It has failed to do so.

> ### iii. Panoramic could not uncover McGraw's widespread infringements using reasonable diligence more than three years before it filed its Complaint.

Even if the Court credits the November 2009 email or the unidentified "magazine article" as alerting Panoramic to potential violations by McGraw, Panoramic could not have uncovered McGraw's widespread infringements using reasonable diligence more than three years before it

---

[48] *Id.* at 205:15-22.
[49] *Id.* at 236:12-238:5.
[50] *Id.* at 236:12-237:6.
[51] *Id.* at 199:21-200:3.
[52] Doc. No. 59-4, ¶ 26.

filed its Complaint.  The Seventh Circuit has instructed that a crucial element of inquiry notice is the potential plaintiff's access to the facts that will be needed to plead its claim.[53]

McGraw's copyright infringements took place in secret; Panoramic had no way to check on McGraw's actual uses of images unless McGraw itself provided that information.[54]  If Panoramic found its photo in a licensed product while browsing in a bookstore, it would have no way of knowing whether that particular copy fell within the number of copies or other license parameters it granted McGraw.  Publishers do not generally update licensors about their uses of photographs after they obtain permission to use them.  And, McGraw has designated its print run numbers, sales information, and geographic distribution of publications, highly confidential trade secrets that can only be filed under seal.[55]

Further, the Seventh Circuit requires that the plaintiff "be able to learn the facts underlying the claim with the exercise of reasonable diligence" within the statutory period.[56]  Only 29 days separate Mr. Seidman's email and the date three years before the date Panoramic's Complaint was filed.[57]  This is hardly sufficient time to go through 21 years of invoices to locate those issued to McGraw, to compile a list of McGraw publications in which Panoramic's images may appear, request print run and distribution information from McGraw, and to receive McGraw's response.   Panoramic could not have accessed the facts underlying its claims earlier than December 11, 2009.  McGraw has not provided any evidence nor offered any explanation as to what Panoramic could have done in those 29 days to learn of the facts underlying each claim McGraw asserts should be barred by the statute of limitations.

---

[53] *See Fujisawa*, 115 F.3d at 1335 (noting that a determination of how probative of fraud the circumstances must be in order to trigger the statute of limitations "will depend on how easy it is to obtain the necessary proof by diligent investigation aimed at confirming or dispelling the suspicion").
[54] Doc. No. 59-4, ¶ 28.
[55] This issue was discussed at the hearing on Plaintiff's motion to seal held on July 10, 2014.
[56] *Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 367 (7th Cir. 1997).
[57] *See* Doc. 58-1 (email dated November 12, 2009) and Doc. No. 1.

**C.      Supreme Court precedent does not require application of the "Injury Rule"
to claims of copyright infringement.**

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,[58] decided by the Supreme Court on May 19,

2014, holds that laches does not bar a copyright infringement claim filed within the three-year

limitations period of 17 U.S.C. § 507(b).[59]  According to McGraw, the Supreme Court, in this

decision on laches, and without so much as a word of analysis, silently adopted the "injury" rule

in all copyright cases, abrogating the very case Justice Ginsburg cites in footnote four of the

*Petrella* opinion.  The footnote says:

> **Although we have not passed on the question**, nine Courts of
> Appeals have adopted, as an alternative to the incident of injury
> rule, a "discovery rule," which starts the limitations period when
> "the plaintiff discovers, or with due diligence should have
> discovered, the injury that forms the basis for the claim."  *William
> A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (C.A.3 2009)
> (internal quotation marks omitted).  See also 6 W. Patry, Copyright
> § 20:19, p. 20–28 (2013) (hereinafter Patry) ("The overwhelming
> majority of courts use discovery accrual in copyright cases.")
> (emphasis added).[60]

Every court to date has rejected the textbook publishers' claim (including McGraw's) that

*Petrella* is somehow relevant here.[61]  McGraw has no support for its position that the injury rule

---

[58] 134 S.Ct. 1962 (2014).

[59] *Id.* at 1969.

[60] *Id.* at 1969 n.4.

[61] *See* Exhibit 1, *Frerck v. John Wiley & Sons, Inc.*, No. 1:11-cv-02727, Memorandum and Order, Doc.
No. 186 at p. 12 n.5 (N.D. Ill. July 14, 2014); *see also Beasley v. John Wiley & Sons, Inc.*, No. 1:12-cv-
08715, Memorandum Opinion, Doc. No. 61 at p.16 n.5 (N.D. Ill. July 21, 2014); *Grant Heilman
Photography, Inc. v. The McGraw-Hill Companies, Inc.*, No. 5:12-cv-02061-MMB, Memorandum Re:
Motion for Partial Summary Judgment, Doc. No. 126 at p. 18 (E.D. Pa. June 26, 2014); *Lefkowitz v. John
Wiley & Sons, Inc.*, Case No. 13 Civ. 6414 (KPF), Opinion and Order, Doc. No. 41 at p. 29 n.9 (S.D.N.Y.
June 2, 2014); *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, Case No. 13 Civ. 5023 (KPF),
Opinion and Order, Doc. No. 52 at p. 23 n.11 (S.D.N.Y. June 2, 2014).  True and correct copies of these
orders attached hereto as <u>Exhibit 3</u>.  Despite McGraw's contrary claim, *Petrella* does not adopt the injury
rule, which would require reversing ten (not nine) circuits that have adopted the discovery rule for
copyright claims.  McGraw fails to disclose that in *Petrella*, Ms. Petrella, the plaintiff and copyright
owner, knew about MGM's infringements of her copyrights at least as far back as 1998 but waited until
2009 to file suit.  Nor does McGraw acknowledge that Ms. Petrella specifically limited her claims to the
infringements that occurred three years before filing her case.  It was against these facts that *Petrella*

now applies to copyright infringement claims in the Seventh Circuit. The discovery rule should be applied to this case.

## II.     Panoramic withdraws its claim for contributory copyright infringement.

Panoramic agrees to withdraw its contributory copyright infringement claims against McGraw and requests that those claims be dismissed without prejudice.[62]

### CONCLUSION

McGraw has not met its burden on summary judgment of showing when it actually infringed so that the Court can analyze when Panoramic's claims accrued and whether the discovery rule tolled the statute of limitations. Even if it had, the November 2009 article and a subsequent email with counsel identifying an issue in the publishing industry generally were not sufficient to notify Panoramic that McGraw was infringing Panoramic's copyrights. Even if they had put Panoramic on inquiry notice, Panoramic exercising due diligence could not have discovered McGraw's infringements. Accordingly, McGraw's motion for summary judgment on the basis of the statute of limitations should be denied.

Dated: July 24, 2014

<div style="margin-left:40%">

Plaintiff Panoramic Stock Images, Ltd., by its attorneys,

s/ *Maurice Harmon*
Maurice Harmon
Harmon & Seidman LLC
11 Chestnut Street
New Hope, PA  18938
(215) 693-1953
maurice@harmonseidman.com

</div>

---

announced, as McGraw accurately but misleadingly quotes, general principles regarding Section 507 limitations *when the copyright holder knows of the infringements more than three years before filing a lawsuit*.

[62] Panoramic would have voluntarily withdrawn these claims had McGraw so requested. As noted by McGraw, Panoramic already withdrew a number of claims for which McGraw's discovery production did not support the maintenance of the claim. *See* Doc. No. 56, ¶ 10; Doc. No. 57, p.1 n.1.

Jennifer M. Johnson
5014 Everett St., #204
Arvada, CO 80002
(317) 294-7901
jennifer@harmonseidman.com

E. Bryan Dunigan
The Law Offices of E. Bryan Dunigan
221 N. LaSalle St., Suite 1454
Chicago, IL 60601
(312) 857-2114
bdunigan@duniganlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which notifies counsel of record.

s/ *Maurice Harmon*
Maurice Harmon