UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PANORAMIC STOCK IMAGES, LTD d/b/a PANORAMIC IMAGES,<br><br>Plaintiff,<br><br>v.<br><br>McGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and Mc-GRAW-HILL SCHOOL EDUCATION HOLDINGS, LLC<br><br>Defendants. | No. 12 C 9881<br><br>Judge Rebecca R. Pallmeyer |

## **MEMORANDUM OPINION AND ORDER**

In recent years there has been a wave of litigation between stock photography agencies and publishing companies involving alleged copyright infringement by the publishers.[1] This is one such case. Plaintiff Panoramic Stock Images, Ltd. ("Panoramic") is an Illinois business that licenses photographs to publishing companies, including Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC (collectively, "McGraw-Hill"). For several years, the parties entered into licensing agreements that permitted McGraw-Hill to make limited use of photographs in which Panoramic holds copyrights. In this lawsuit, Panoramic alleges that McGraw-Hill committed copyright infringement by exceeding the scope of the parties' licensing agreements for various images.[2] (*See* Compl. [1], ¶¶ 12, 28–30.)

---

[1] In this district alone, several cases have been filed that involve substantially similar claims as those alleged here. *See, e.g.*, *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 12-cv-10003 (N.D. Ill.) (Feinerman, J.); *Frerck v. Pearson Education, Inc.*, 11-cv-5319 (N.D. Ill.) (Shah, J.); *Frerck v. John Wiley & Sons, Inc.*, 11-cv-2727 (N.D. Ill.) (Dow, J.); *Beasley v. John Wiley & Sons, Inc.*, 12-cv-8715 (N.D. Ill.) (St. Eve, J.) (settled Sept. 25, 2014); *Panoramic Stock Images, Ltd. v. Pearson Education, Inc.*, 12-cv-9918, (N.D. Ill.) (Coleman, J.) (settled Sept. 9, 2014); *Frerck v. The McGraw-Hill Companies, Inc.*, 12-cv-7516 (N.D. Ill.) (Dow, J.) (settled May 12, 2014).

[2] In an earlier opinion [32], this court concluded that Panoramic possessed valid copyright registrations for certain images that were registered as part of collective works despite the fact that the constituent images in the collective works did not list identification information, such as photographer or title. (*See* Mem. Op. & Order, filed Aug. 9, 2013, 3–12.) The court further concluded that Panoramic could sue for infringement of images for which copyright

Both parties have now moved for partial summary judgment. For the reasons explained here, the court concludes that there are disputes of fact concerning when Panoramic knew or should have known of its claims against McGraw-Hill. McGraw-Hill's motion for summary judgment [54] on its statute of limitations defense is therefore denied. There are no disputes concerning liability for certain of Panoramic's infringement claims, but McGraw-Hill has affirmative defenses to the damages claims for that infringement. Panoramic's motion for summary judgment [62] is therefore granted in part and denied in part.

## **BACKGROUND**

Panoramic is a stock photography agency. It licenses photographs created by various photographers to publishers. McGraw-Hill is a textbook publishing company and licensee of Panoramic. (Pl.'s Stat. of Undisp. Mat. Facts [59-1], ¶¶ 1-2.) Between 1991 and 2012, Panoramic sold McGraw-Hill limited licenses to use Panoramic's photographs in McGraw-Hill's various publications. (*Id.* ¶ 7; Compl., Ex. 1 [1-1], Table of Images; Def.'s Stat. of Undisp. Mat. Facts [56], ¶¶ 6–7.) The business process generally worked as follows: McGraw-Hill's photo editors would review selections of photographs made available by Panoramic and identify images McGraw-Hill wished to use in its publications. McGraw-Hill would then typically send Panoramic a formal invoice request. This request would identify each image requested, list the publications for which an image would be used, and estimate how many times McGraw-Hill would reproduce the image. (Def.'s Stat. of Undisp. Mat. Facts ¶ 7.) McGraw-Hill was unable to determine the precise number of times it would reproduce each image because the textbooks for which McGraw-Hill sought to use the photographs had not yet been published. (*Id.*) The resulting image licensing agreements, reflected in the invoices Panoramic issued and McGraw-Hill paid, limited the number of publications in which McGraw-Hill could reproduce the photographs, limited the geographic distribution area for such publications, and limited the type

---

applications had been submitted to the Copyright Office but had not yet been formally registered. (*Id.* at 12.)

2

of media where the photographs could be reproduced.  (Pl.'s Stat. of Undisp. Mat. Facts ¶ 8; *see generally* Douglas Segal Decl. [59-4] (hereinafter "Segal Decl."), ¶ 14 and Ex. 3 [59-9], Licensing Agreements.)  The parties agree that McGraw-Hill exceeded the print quantity and distribution limitations for some of Panoramic's photographs and reproduced certain photographs in unauthorized electronic media.  (Def.'s Resp. to Pl.'s Stat. of Undisp. Mat. Facts [68], ¶ 15.)  McGraw-Hill acknowledges, further, that it did not request additional invoices from Panoramic when its actual use of the images exceeded the license terms.  (*Id.* ¶ 12.)

The parties dispute when Panoramic first learned that McGraw-Hill was violating the terms of the parties' licensing agreements.  McGraw-Hill believes Panoramic "knew of the basis for its claims" against the publisher as early as November 2009.  (Def.'s Stat. of Undisp. Mat. Facts ¶ 17.)  According to McGraw-Hill, "[a]t some point before November 12, 2009, Douglas Segal [Panoramic's President] read a magazine article 'about unauthorized use of stock agencies' photographs by publishers.'"  (*Id.*)  The article referred to ongoing litigation between other stock agencies and publishing companies.  (*Id.*)  On November 12, 2009, an attorney involved with such litigation, Christopher Seidman of Harmon & Seidman, P.C., sent an e-mail message to Mr. Segal, thanking him for contacting Mr. Seidman's office "to discuss the status of litigation by visual art licensors against textbook publishers."  (Pl.'s Resp. to Def.'s Stat. of Undisp. Mat. Facts ¶ 18.)  In the message, Mr. Seidman also "welcome[d] [Panoramic] as a client," referred to a prior discussion of "systemic copyright infringement" with Mr. Segal, and requested that Mr. Segal compile spreadsheets of the invoices that Panoramic had sent to various textbook publishers over the years, including McGraw-Hill.  (*Id.*)  These invoices contained the license terms for each image; the spreadsheets reflecting the terms of each invoice were intended to document the extent of infringement of Panoramic's images by various publishers.[3]  Panoramic asserts, however, that at the time of this correspondence it did not

---

[3] McGraw-Hill contends that Exhibit 1 attached to the Complaint is one such spreadsheet.  (Mem. in Supp. of Def.'s Mot. for Part. Sum. Judg. [57], 13.)

3

know of any specific titles, publications, or publishers that were allegedly infringing its copyrights. (*Id.* ¶ 17.) Indeed, Panoramic maintains that it "did not become aware of any issues with any specific publisher's use of its photographs" until October 2012, when an employee of a different publisher, John Wiley & Sons, Inc., contacted Panoramic to request permission to use Panoramic's images beyond the parties' original license terms. (Pl.'s Resp. to Def.'s Stat. of Undisp. Mat. Facts ¶ 17.) The John Wiley employee told Mr. Segal that there were "several images" that "needed updating rights-wise." (Segal Decl., Ex. 5 [59-5]). The employee noted that at least one image had a "print run overage" and also that John Wiley & Sons was seeking media and digital rights for another image. (*Id.*) This communication presumably prompted Mr. Segal to review McGraw-Hill's licenses in more detail to account for specific infringing activity.

Panoramic filed the current lawsuit on December 11, 2012. Panoramic originally asserted 276 claims for copyright infringement and contributory copyright infringement and listed 170 images by 64 photographers whose copyrights McGraw-Hill allegedly infringed. (*See* Compl., Ex. 1, Table of Images.) For one reason or another, many claims in the original Complaint have been withdrawn; 82 remain for resolution.[4] (*See* Johnson First Decl. [59-2], ¶ 4, Ex. 1 [62-1], Table of Images; Def.'s Reply to Pl.'s Resp. to Def.'s Stat. of Undisp. Mat. Facts [73], ¶ 10.)

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a summary judgment

---

[4] In the course of briefing these motions, Panoramic withdrew its copyright infringement claim for the image in Row 110 of Exhibit A to the Complaint. (*See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. [75], 8.) The remaining 82 claims are identified in Exhibit 1 to the First Declaration of Jennifer Johnson, which Panoramic attached to its motion. Plaintiff has also withdrawn its contributory copyright infringement claims. (*See* Pl.'s Resp. to Def.'s Mot. for Part. Sum. Judg. [71], 13.)

motion, the court construes the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir.1997). The court will grant summary judgment against a party that does not produce evidence that would allow a reasonable jury to find in its favor on a material question. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir.1995). In this case, where both sides seek summary judgment, the court evaluates each motion by viewing all evidence and drawing all reasonable inferences in favor of the party opposing the motion. *See F.T.C. v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 792 (N.D. Ill. 2007).

The court proceeds as follows. First, the court determines whether Panoramic's claims are barred by the Copyright Act's statute of limitations. Second, the court discusses whether summary judgment is appropriate on the issue of McGraw-Hill's liability for Panoramic's 82 copyright infringement claims. Lastly, the court decides which of McGraw-Hill's affirmative defenses are viable as a matter of law.

## II. Copyright Act Statute of Limitations

### A. Whether the Injury Rule or Discovery Rule Applies to Determine Whether Panoramic's Claims Are Timely

The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Panoramic filed this suit on December 11, 2012. Absent tolling, the Act bars claims that accrued before December 11, 2009. This circuit applies the "discovery rule," which tolls the accrual date for the copyright statute of limitations until "the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (citing *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983)).

McGraw-Hill contends that a recent Supreme Court case has abrogated the discovery rule in this circuit. In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), the Court

held that the doctrine of laches did not bar a plaintiff's copyright claim when the most recent act of infringement took place within the three-year limitations period. *Id.* at 1967–68. Relevant to the present case, the Court applied the injury rule (under which the statute of limitations is triggered when an injury occurs, even if a plaintiff is not aware of the injury) to determine when the plaintiff's copyright claim accrued. *See id.* at 1969 ("A copyright claim thus arises or 'accrues' when an infringing act occurs."); *id.* at 1972–73 (applying the rule). McGraw-Hill claims that *Petrella* overruled this circuit's discovery rule and that, under the injury rule, "Panoramic may not seek damages for any of its claims involving an unauthorized printing or distribution of an at-issue book that occurred prior to December 11, 2009." (Def.'s Mem. in Supp. of Part. Sum. Judg. [72], 6.)

The problem for McGraw-Hill's position is that the Court in *Petrella* qualified its use of the injury rule in a footnote, stating: "*Although we have not passed on the question*, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Petrella*, 134 S. Ct. at 1969 n.4 (emphasis added) (internal quotation marks omitted). So, even though the Court noted the potential conflict with the law of nine circuits, the Court *expressly declined* to decide that the rule it adopted trumped the discovery rule for copyright statute of limitations issues. Until the Seventh Circuits holds otherwise, this court concludes that the discovery rule is still the law of this circuit. This court will apply that rule to determine when Panoramic's claims accrued. *See Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 2014 WL 5368839, 770 F.3d 610, at *4, *8 (7th Cir. Oct. 23, 2014) (acknowledging that the Seventh Circuit "recognizes a discovery rule in copyright cases" and reserving the question of "whether *Petrella* abrogates the discovery rule in copyright cases"); *see also Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, No. 12-cv-10003, 2014 WL 4344095, at *7 (N.D. Ill. Sept. 2, 2014) (holding that *Petrella* did not abrogate this circuit's discovery rule); *Frerck v. Pearson Educ., Inc.*, —– F.Supp.2d —–, 2014

6

WL 3906466, at *3 n.3 (N.D. Ill. Aug. 11, 2014) (same); *Beasley v. John Wiley & Sons, Inc.*, —— F.Supp.2d ——, 2014 WL 3600519, at *6 n.5 (N.D. Ill. July 21, 2014) (same); *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 WL 3512991, at *6 n.5 (N.D. Ill. July 14, 2014) (same).

### B. Whether Panoramic's Claims Are Time-Barred as a Matter of Law

In the alternative, McGraw-Hill argues that the discovery rule bars Panoramic's claims because Panoramic learned or reasonably should have learned that McGraw-Hill was infringing its copyrights no later than November 2009. (*See* Def.'s Mem. in Support of Mot. for Part. Sum Judg. at 11–14.) McGraw-Hill cites the following undisputed facts: First, sometime "before November 12, 2009," Mr. Segal saw a magazine article that detailed the "unauthorized use of stock agencies' photographs by publishers." (Def.'s Stat. of Undisp. Mat. Facts ¶ 17.) Second, on November 12, 2009, attorney Mr. Seidman emailed Mr. Segal and referenced a prior conversation where the two had "discuss[ed] the status of litigation by visual art licensors against textbook publishers for their systemic copyright infringements." (*Id.* ¶ 18.) Third, Mr. Seidman welcomed Panoramic as a client and told Mr. Segal to gather information about Panoramic's invoices sent to various textbook publishers, including McGraw-Hill, to determine whether "infringing activity" occurred. (*Id.*) Panoramic does not dispute this evidence but maintains that it did not discover McGraw-Hill's *specific* infringing activity for each of its claims until discovery was completed in this case, or at least not until after it filed this lawsuit. (Pl.'s Resp. to Def.'s Mot. for Part. Sum. Judg. at 8.)

The court concludes that a reasonable jury could find that Panoramic did not learn, and reasonably could not have learned, that McGraw-Hill infringed specific Panoramic copyrights until at least October 2012, when the employee from John Wiley & Sons contacted Mr. Segal. The court rejects the argument that the discovery rule was satisfied (and therefore the statute of limitations began to run) merely because Mr. Segal read a magazine article that discussed the fact that publishers had used photographs from stock agencies in unauthorized ways. On

7

similar facts, Judge Robert Dow of this court has observed that "an article identifying an issue in the publishing industry generally did not obligate Plaintiff to go through 19 years of licenses to preserve his copyright infringement claims. If that were the expectation, then stock photo agencies and photographers likely would spend more money monitoring their licenses than they receive from issuing licenses." *Frerck*, 2014 WL 3512991, at *6. Mr. Segal testified that he did not have any knowledge of claims against McGraw-Hill either before or after he spoke with Mr. Seidman in November 2009, and also that he did not know until much later that any specific publishers had violated his company's rights. (Jennifer Johnson Second Decl. [71-3], ¶ 4, Ex. C [71-6], Excerpts from Deposition of Douglas Segal.) Viewing this evidence in the light most favorable to Panoramic, a genuine dispute of material fact remains concerning whether Panoramic had actual or constructive knowledge of specific claims against McGraw-Hill in November 2009, as opposed to mere suspicions and concerns about potential wrongdoing. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002) ("[T]he modern tendency is to toll until the plaintiff knew or by reasonable diligence should have known of both the injury and its governing cause. An abstract fear of wrongdoing is not enough.") (internal citation omitted).

McGraw-Hill next argues that Panoramic was charged with "inquiry notice" in November 2009, and that this inquiry notice triggered the statute of limitations for Panoramic's claims. The court disagrees. Under the "inquiry notice" doctrine, a statute of limitations "begins to run once a plaintiff has knowledge which would lead a reasonable person to investigate the possibility that her legal rights had been infringed." *CSC Holdings, Inc.*, 309 F.3d at 992–93. However, the Seventh Circuit recently clarified that the inquiry notice doctrine, at least as applied to Copyright Act claims, is distinct from the discovery rule, and establishing inquiry notice does not necessarily start the statute of limitations clock. In *Chicago Building Design*, an architectural firm sued one of its clients and another architect for copyright infringement. The firm claimed that the client and the architect had copied the firm's blueprint designs for a restaurant

8

renovation and simply labeled them with the defendant architect's name. 770 F.3d 610, 2014 WL 5368839, at *1 (7th Cir. Oct. 23, 2014). The defendants moved to dismiss the copyright claims as time-barred, arguing that the plaintiff architectural firm had "inquiry notice" of potential copyright violations more than three years earlier when one of the firm's employees saw the allegedly plagiarized blueprints. *Id.* The district court agreed and dismissed the claim, but the Seventh Circuit reversed. *Id.*

Relevant here, the court discussed how the inquiry notice doctrine is distinct from the discovery rule. The court explained that inquiry notice means "knowledge that would have led a reasonable person to start investigating the possibility that his rights had been violated." *Id.* at *5. The court distinguished this inquiry from the discovery rule standard, which requires actual or constructive knowledge of the basis for a claim. *Chicago Bldg. Design, P.C.*, 770 F.3d 610, 2014 WL 5368839, at *5 (citing *Gaiman*, 360 F.3d at 653). The court concluded that the district court erred by conflating the two inquiries:

> The concept of inquiry notice may help to identify the time at which a reasonable plaintiff can be expected to start investigating a possible violation of his rights, *but it does not itself trigger the statute of limitations*. Accordingly, the district court should not have used inquiry notice as the starting date for the statute of limitations.

*Id.* at *6 (emphasis added); *see also id.* at *5 ("'[I]nquiry notice' is not the same as actual or constructive discovery.").

In this case, Panoramic may well have been placed on inquiry notice in November 2009 when Mr. Segal communicated with Mr. Seidman concerning "systemic copyright infringement" by textbook publishers and discussed whether Panoramic might have potential claims against certain publishers, including McGraw-Hill. But inquiry notice is not the same thing as actual or constructive knowledge, which is what the discovery rule requires to trigger the statute of limitations. *Id.* And Panoramic has presented evidence that it did not have actual or constructive knowledge of any single instance of copyright infringement against it by any textbook publisher until October 2012 at the earliest, just months before Panoramic filed this

9

lawsuit.

Further, a fact issue remains whether Panoramic reasonably should have discovered its injuries in the time between Mr. Segal's communications with Mr. Seidman in November 2009 and December 11, 2009, which was three years prior to when this suit was filed and would be the cutoff date for McGraw-Hill's liability absent tolling. McGraw-Hill was in sole possession of information concerning its actual use of images licensed from Panoramic and did not, at least at the time, provide Panoramic with updates concerning its usage of the licensed images. (*See* Segal Decl. ¶ 28.) Nor is it likely Panoramic could reasonably have discovered infringing activity on its own, because if Panoramic saw one of its photographs being used in a licensed publication, it might be unable to determine whether that particular publication fell within the scope of the license. *Cf. Frerck*, 2014 WL 3512991, at *6 n.6. The court therefore denies McGraw-Hill's motion for summary judgment as to whether Panoramic's claims are time-barred.[5]

## III. Copyright Infringement

To establish copyright infringement, Panoramic must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Where the plaintiff has granted the defendant a license, to establish the second element, the plaintiff must demonstrate that the license was limited in scope and that the scope of the license has been exceeded." *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 921 (N.D. Ill. 2009); *see I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). Panoramic asks the court to grant summary judgment on the issue of

---

[5] McGraw-Hill separately argues that all printings and distributions of the book *1995 Science Interactions Course 2* were completed by 2008. Thus, even if the discovery rule applies, Panoramic may not recover damages for infringements related to this title (listed in Row 6 of Exhibit A to the Complaint). (*See* Def.'s Resp. to Pl.'s Part. Mot. for Sum. Judg. at 6.) Panoramic does not dispute this fact (*see* Pl.'s Resp. to Def.'s Further Stat. of Add'l Facts [75-1], ¶ 1), but neither party has addressed whether the same is true for other allegedly infringing publications. The court declines to resolve the issue concerning this single book in McGraw-Hill's favor at this time, but will do so if there are no disputes concerning the timing of this infringement.

McGraw-Hill's liability for 82 claims of copyright infringement based on print overruns, distributions of products containing Panoramic's photographs outside licensed geographic areas, and use of Panoramic's photographs in unauthorized formats (e.g., unauthorized reproduction of the images in electronic versions of publications). McGraw-Hill argues that issues of material fact preclude summary judgment as to one claim in its entirety and disputes that it reproduced certain Panoramic photographs in unauthorized formats for certain other titles.

### A.  Ownership of Valid Copyright

To prove copyright infringement, Panoramic must first establish that it owns valid, registered copyrights in the Panoramic photographs. *Feist*, 499 U.S. at 361. As evidence on this issue, Plaintiff submitted Panoramic President Doug Segal's Declaration and attached exhibits, which included photographer-agency agreements, copyright cause-of-action assignment agreements, and certificates of copyright registration for each of the images that underlie Panoramic's 82 claims. (*See* Segal Decl., Exs. 1a [59-5], 1b [59-6], 1c [59-7], 2 [59-8].) McGraw-Hill does not challenge this evidence except for one claim. Specifically, in Row 48 of Exhibit A to the Complaint, Panoramic identifies the photographer of the image in question as Jerry Driendl. But the related invoice for this image lists Karalee Griffin as the photographer.[6] McGraw-Hill argues that Panoramic has provided neither a photographer-agency agreement nor a copyright-assignment agreement signed by Karalee Griffin that would give Panoramic standing to sue for copyright infringement on this image. In response, Panoramic attached a declaration made by Jerry Driendl, in which Mr. Driendl explains that he created the image at issue and that he used "Karalee Griffin" as a *nom de plume*.[7] (Pl.'s Reply to Def.'s Resp. to Pl.'s

---

[6]  Exhibit A to the Complaint identifies the related invoice for this image as "Invoice #77664." But McGraw-Hill's evidence cited in opposition identifies the invoice as "Invoice #990951." (*See* Beall Decl. [70], ¶ 2 and Ex. 1.) The court assumes for the purposes of this motion that this discrepancy is not material.

[7]  *Nom de plume* is French for "pen name," that is, a pseudonym. *See Garner's Modern American Usage* 672 (3d ed. 2009).

Mot. for Part. Sum. Judg., Ex. 1 [75-2], Jerry Driendl Decl. (hereinafter "Jerry Driendl Decl."), ¶¶ 2–3.) Panoramic then directs the court to Mr. Driendl's photographer-agency agreement as well as his copyright-assignment agreement that Panoramic attached as exhibits to Mr. Segal's declaration. (*See* Segal Decl. ¶ 6; Ex. 1a, at 11; Ex. 1b, at 44–48.)

The court denies Panoramic's motion for summary judgment on this claim because a reasonable jury could disbelieve Mr. Driendl's bare statement that he sometimes submits photographs under the pseudonym "Karalee Griffin." (*See* Jerry Driendl Decl. ¶¶ 2–3.) Panoramic attached the declaration to its reply brief, so McGraw-Hill has not had a chance to depose Mr. Driendl or otherwise investigate this statement. Evidence beyond Mr. Driendl's declaration might be necessary to establish the authorship of the image in question.

That being said, McGraw-Hill does not dispute Panoramic's ownership of any other copyright, and so the court grants summary judgment to Panoramic on the issue of whether it owns valid copyrights in the remaining 81 images.

## B.   Unauthorized Use

In addition to proving ownership of valid copyrights, Panoramic must also establish that McGraw-Hill "exceed[ed] the scope" of the licenses it purchased from Panoramic. *I.A.E., Inc.*, 74 F.3d at 775. Panoramic submitted evidence that the licenses it issued to McGraw-Hill, reflected in the various invoices Panoramic generated, were limited in scope. Specifically, each license limited the print quantities, geographic distribution areas, and the types of media in which McGraw-Hill was authorized to use Panoramic's photographs. (*See generally* Segal Decl., Ex. 3.) The facts show that McGraw-Hill paid the licensing fees identified in the invoices and used the photographs, which establishes that McGraw-Hill accepted the license terms for each image. (*Id.*)

Panoramic submitted evidence that McGraw-Hill exceeded these restrictions by reproducing more copies of the images than Panoramic authorized, distributing the images outside designated geographic areas, and reproducing the images in unauthorized electronic

media. The following examples illustrate McGraw-Hill's use of Panoramic's images beyond the scope of the licenses that the parties negotiated: Row 6 of Exhibit 1 to the first Johnson Declaration identifies a license for one of Panoramic's images. The license authorized McGraw-Hill to print the image up to 40,000 times in the United States only and did not grant McGraw-Hill electronic rights. According to McGraw-Hill's own records, it printed the image 544,827 times, distributed it outside the licensed area, and reproduced the image in electronic formats. (*See* Johnson First Decl., Ex. 1, Table of Images.) Row 22 of the same exhibit shows that Panoramic licensed this particular image to McGraw-Hill with the following terms: 100,000 prints, distribution in the United States with a five percent allotment to Canada, and no electronic rights. McGraw-Hill's records show that it printed the image 514,101 times, distributed more than 4,000 copies outside the permitted geographic area, and reproduced the image in an unlicensed CD. (*Id.*)

As the above examples demonstrate, McGraw-Hill violated the licensing agreements in three distinct ways: print overruns, distribution outside the authorized geographic areas, and unlicensed reproductions in electronic media. McGraw-Hill disputes that it reproduced images electronically without authorization in eight of its titles but does not otherwise deny it infringed Panoramic's copyrights in all three ways for the remaining claims.[8] Accordingly, the court grants summary judgment to Panoramic on the issue of McGraw-Hill's liability for copyright infringement on the unchallenged claims.

C. **Electronic Distribution of Certain Photos**

McGraw-Hill does challenge Panoramic's showing with respect to eight titles, which Panoramic contends McGraw-Hill published in electronic formats without authorization.[9] All that

---

[8] As noted above, fact issues preclude summary judgment on the claims in Rows 6 and 48 of the Complaint.

[9] The titles at issue are: (1) *1999 Adventures in Time and Place* (Grade 6, "Worlds"); (2) *2001 McGraw-Hill Language Arts* (Grade 3); (3) *2001 McGraw-Hill Language Arts* (Grade 2); (4) *2002 Glencoe Literature* (Grade 7); (5) *2003 Macmillan/McGraw-Hill Social Studies* ("Our Nation"); (6) *2003 Macmillan/McGraw-Hill Social Studies* (Grade 4, "Our Country's

Panoramic has done, McGraw-Hill argues, is to reference spreadsheets that document publication information for the titles generally without otherwise establishing that these titles appear in electronic versions. (Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. [67], 8.) In response, Panoramic points out that its images do appear in various electronic versions of at least one title. For the other titles, Panoramic argues that "McGraw does not deny that the images were used in the electronic versions[.]" (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. at 7.) Further, Panoramic cites the deposition of a McGraw-Hill employee who explains that, in general, the company's electronic products are generated from print publication versions and contain essentially the same content. (*See* Johnson Third Decl. [75-3], ¶ 2, Ex. A, Excerpts from Joyce Berendes Dep., taken on Aug. 28, 2013 in *Frerck v. McGraw-Hill Global Education Holdings, LLC*, No. 12-cv-7516 (N.D. Ill.).)[10]

The court denies summary judgment as to whether McGraw-Hill reproduced Panoramic's images in electronic versions of the eight titles at issue without authorization. Deposition testimony that merely discusses the general process for converting print formats to electronic media is insufficient to support summary judgment, as that testimony says nothing about the specific publications at issue here. In its reply brief supporting its motion for summary judgment, Panoramic attached a document that it argues shows that McGraw-Hill used Panoramic's photographs in electronic versions of at least one title: *Bon Voyage, Level 3, 2005*. (*See* Johnson Third Decl. ¶ 3, Ex. B [75-5], *Bon Voyage, Level 3, 2005* Panoramic Image Inventory.) Panoramic attached a declaration of one of its attorneys, Jennifer Johnson. The declaration explains that in the document, there is a column entitled "Found in Flip Thru."

---

Regions"); (7) *MMH Social Studies G6 SE 2003*; (8) *Bon Voyage, Level 3 2005*. (*See* Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. at 8) (citing Johnson First Decl., Exs. 3c, 6c, 7c, 11c, 13b, 14b, 15c, and 18c.)

[10] McGraw-Hill does not dispute that, for the print publications of the titles at issue, it exceeded the distribution limits defined in the respective invoices or that it distributed the publications outside the licensed geographic area. (*See* Nabiha Syed Decl. [69], ¶¶ 2a, 2c, 2d, 2e, 2i, 2j, 2m, and 2o.). Further, the court understands that, outside the eight titles at issue here, McGraw-Hill does not dispute that it reproduced Panoramic's images in electronic media without authorization.

(Johnson Third Decl. ¶ 3.)  The "Found in Flip Thru" column says "yes" for several electronic editions of the *Bon Voyage* title, such as "Online Student Edition[]," and "Level 3 Web site." (*See* Johnson Third Decl., Ex. B.)  According to Panoramic, the "yes" signifies that McGraw-Hill included Panoramic's images in these electronic versions of the *Bon Voyage* publication without authorization.

The court, however, denies summary judgment as to all titles, including the *Bon Voyage* title, for a few reasons.  First, with respect to the *Bon Voyage* title, the court is presented with nothing more than Panoramic's self-interested representation that a "yes" in the "Found in Flip Thru" column in the title's image inventory document means that McGraw-Hill reproduced the image in electronic title versions without authorization.  (*See* Johnson Third Decl. ¶ 3.)  But the court has no way to know what a "Flip Thru" is and refuses to credit Panoramic's bare assertion in its reply brief without requiring some evidence in support, and allowing McGraw-Hill a chance to test that evidence.

Second, the court notes that the image inventory document for another disputed title, *2002 Glencoe Literature (Grade 7)*, contains a "yes" under the column "Image Found in Flip Thru" for the Interactive Teacher Edition's "online/digital" format. (*See* Johnson First Decl., Ex. 11(c) [62-2].)  Curiously, however, Panoramic has not argued that this "yes" means that McGraw-Hill *did* violate the license terms for the image contained in this edition.  Panoramic's position, described above, would appear to dictate that the "yes" in the "Image Found in Flip Thru" column for the *Glencoe Literature* image inventory document would have the same meaning as the "yes" in the *Bon Voyage* "Found in Flip Thru" column.  Further, in the *MMH Social Studies Grade 6 SE 2003* image inventory document, the "Image Found in Flip Thru" column contains the notation "OP" for the title's National CD online/digital version and "GOP" for its National SE CD online/digital version. (*See id.* at Ex. 15(c) [62-2].)  The court does not know what either notation represents or how they differ from the "yes" notations in the respective "Found in Flip Thru" columns for the *Bon Voyage* and *Glencoe Literature* titles.  As such, the

15

court denies summary judgment on the issue of whether McGraw-Hill reproduced Panoramic's images in electronic form without authorization for these three titles.

Finally, as for the remaining titles, the court denies summary judgment to Panoramic for lack of evidence. The court has reviewed the image inventory documents for the remaining five titles. (*See*, Johnson First Decl., Exs. 3c, 6c [62-1]; Exs. 7c, 13b, 14b [62-2].) For these, as well, the documents include a column entitled "Found in Flip Thru." (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. at 8.) While this column includes a "yes" for several online editions of the *Bon Voyage* title and at least one "yes" for one electronic publication of *Glencoe Literature*, the respective columns for the other publications do not reflect that Panoramic's images were used in any electronic versions. And, regardless, because the court has concluded that even a "yes" in the "Found in Flip Thru" column *does not* entitle Panoramic to summary judgment, the absence of the "yes" for these other image inventory documents makes summary judgment even less appropriate. The court therefore denies summary judgment on the issue of whether McGraw-Hill reproduced Panoramic's images in electronic formats for the remaining five titles without Panoramic's authorization.

## IV.     Affirmative Defenses[11]

Panoramic requests summary judgment on several of McGraw-Hill's affirmative defenses. The court has already concluded that material issues of fact preclude summary judgment on McGraw-Hill's statute of limitations defense. The court also denies summary judgment to Paranomic on McGraw-Hill's laches defense, to the extent this defense is enmeshed with McGraw-Hill's statute of limitation arguments. *See Panoramic Stock Images*, 2014 WL 4344095 at *9 (denying summary judgment to plaintiff on laches defense because whether the defense is viable "necessarily depends" on resolving the statute of limitation issue)

---

[11] McGraw-Hill has withdrawn its affirmative defenses relating to the sufficiency of copyright registrations, estoppel, unclean hands, implied license/course of dealing, acquiescence, novation, and satisfaction. (Def.'s Resp. to Pl.'s Mot. for Part. Sum. Judg. at 9 n.2.)

(citing *Petrella*, 134 S. Ct. at 1972). McGraw-Hill has presented evidence challenging Panoramic's standing to pursue the image identified in Row 48 of Exhibit A to the Complaint. Embedded in that standing argument is a challenge to the sufficiency of the copyright assignment Panoramic holds for that image. The court reserves ruling on McGraw-Hill's standing and sufficiency-of-copyright assignment defenses as they apply to this claim. Panoramic is entitled to summary judgment on these defenses, however, with respect to Panoramic's claims of infringement of the remaining images.

Panoramic's motion for summary judgment on McGraw-Hill's remaining defenses is denied, but the court understands that the defenses bear on the question of damages only. Defenses of timeliness of copyright registrations for the purposes of establishing eligibility for statutory damages, innocent intent, breach of contract, and mitigation, may be raised in further proceedings to determine what damages are owed to Panoramic.

## **CONCLUSION**

For the reasons discussed above, the court denies McGraw-Hill's motion for summary judgment [54] on the issue of whether the Copyright Act's three-year statute of limitations bars Panoramic's claims. Panoramic's motion is granted in part and denied in part [62]. The court denies summary judgment on the issue of liability as to the claims listed in Rows 6 and 48 of the Complaint. The court denies summary judgment on the issue of whether McGraw-Hill used Panoramic's images in the electronic versions of eight of McGraw-Hill titles without authorization. The court grants summary judgment to Panoramic on the issue of liability as to all other instances of copyright infringement documented in Exhibit 1 to the Johnson Declaration. The court grants summary judgment to Panoramic on McGraw-Hill's use of standing and sufficiency-of-copyright assignment agreement defenses for all claims but the one

listed in Row 48 of Exhibit A to the Complaint. The court denies summary judgment with respect to McGraw-Hill's remaining affirmative defenses, to the extent they bear on damages and not liability.

ENTER:

Dated: November 25, 2014

REBECCA R. PALLMEYER
United States District Judge